UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21033-CV-LENARD/GOODMAN

**SECURITIES AND EXCHANGE COMMISSION**,

    Plaintiff,

v.

**LOTTONET OPERATING CORP.,
DAVID GRAY, and
JOSEPH VITALE a/k/a DONOVAN KELLY**,

    Defendants, and

**ORACLE MARKETING GROUP, INC.,
CRM INTERACTIVE LLC,  and
THE COUNCIL CLUB LLC**,

    Relief Defendants.
_____/

### ORDER ON RECEIVER'S FIRST INTERIM JOINT APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR RECEIVER AND HIS COUNSEL

THIS CAUSE came before the Court upon Receiver Ryan K. Stumphauzer's ("Receiver") First Interim Joint Application for Allowance and Payment of Compensation and Reimbursement of Expenses for Receiver and His Counsel ("Application," D.E. 67) for the period of March 21, 2017 through April 30, 2017 ("Application Period"), filed June 15, 2017.  In the Application, the Receiver moved for Court approval of the total amount of fees and costs incurred during the Application Period by the Receiver and his counsel, attorney Adam L. Schwartz ("Schwartz") of Homer Bonner Jacobs, P.A. ("HBJ").   In addition, the Receiver moved for Court

1

authorization to distribute to the Receiver and HBJ, from the Receivership Estate, an interim amount of fees (the total amount of fees requested less a 20% holdback) and the total amount of costs incurred by the Receiver and HBJ. Plaintiff Securities and Exchange Commission ("SEC") has taken no position on the relief sought therein. (Id. at 10.)

Based on a review of the Application and supporting documentation filed in conjunction with the Application (D.E. 67-1; D.E. 67-2), and the record as a whole, the Court finds as follows.

I.   Discussion

The Order appointing the Receiver provides that "[t]he Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to prior Court approval. (See D.E. 12 at 17 ¶ 51.) The Receiver states that he and his retained personnel expended 162 hours on this case during the Application Period which generated $43,600.00 in attorneys' fees. (Id. at 5.) The Receiver states that HBJ expended 91.3 hours on this case during the same time period and generated $28,846.00 in attorneys' fees. (Id. at 6.) Applying a 20% holdback, the total amount of attorneys' fees for which the Receiver now seeks compensation is $34,880.00 + $23,076.80 = $57, 956.80. (Id. at 5-6, 10.) The Receiver also requests a costs award in the total amount of $5,512.54 based on disbursements that the Receiver and HBJ made in connection with this case. (Id. at 6, 10; D.E. 67-2.)

A. Reasonable Compensation

Courts in this Circuit apply the lodestar method to determine reasonable attorneys' fees. See Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). The lodestar is calculated by multiplying the reasonable hourly rate by the reasonable number of hours expended. Id. at 1299. The fee applicant bears the burden of documenting both the hourly rate and hours expended. See ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). Courts are not authorized to be generous with the money of others, and "it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Id. at 428.

I. Hours Reasonably Expended

In support of his request for attorneys' fees, the Receiver submitted detailed, partially-redacted billing records for work performed by himself, Schwartz, and their retained personnel in this matter. (See D.E. 67-1.)

Counsel is expected to use "billing judgment" and exclude "excessive, redundant, or otherwise unnecessary" hours from a fee application, Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), "irrespective of the skill, reputation or experience of counsel." Barnes, 168 F.3d at 428. Redundant hours generally occur where more than one attorney is working on a case. There is nothing inherently unreasonable about a client retaining multiple attorneys – or, in this case, the Receiver retaining counsel -- who "may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1303 (citing Johnson v. University College of Univ. of Ala., 706 F.2d 1205, 1208 (11th Cir.

3

1983)). Thus, awarding fees for "for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." Johnson, 706 F.2d at 1208.

A review of the billing records reflects some overlap in the work performed by multiple attorneys, or by attorneys and retained personnel, but the relevant time entries do not provide sufficient justification as to why more than one individual worked on the same task. For instance, on March 21, 2017, the Receiver billed 10.2 hours for the following services:

> Other Activity: Upon learning of appointment as receiver, exchanged correspondence and conducted several phone calls with Amie Berlin and Adam Schwarz, and conducted strategic meeting with Sloman to discuss initial tasks and practical steps. Reported to LottoNet headquarters and interfaced with FBI and SEC personnel to discuss corporate documents and computers, and to discuss who would copy, secure or seize same. lnteracted with several FBI agents, including CART personnel to gain understanding of office map and document organization methods, as well as number, location and types of computers. Conducted phone calls and/or in-person meetings with landlord and sub lessor. Verified that LottoNet Corporate office is subleased pursuant to written agreement such that we have lawful authority to change locks and secure premises. Called and coordinated with landlord. Conducted discussion with Adam Schwartz, counsel for receiver, []. To facilitate decisions regarding documents, worked together with Adam Schwartz to conduct initial review of documents from executive offices, including Gray's. Identified and removed privileged materials. During drive home, conducted phone call with Adam Schwartz to identify priority list of items to be achieved tomorrow[.] (10.2).

(D.E. 67-1 at 2.)

On the same day, Schwartz billed 10 hours for the following:

Meeting with Receiver and Aime Berlin on site at LottoNet's offices to discuss case and status of LottoNet's facilities (3.); confer with FBI and AUSA Michael Berger regarding same (1.); assist Receiver in taking

4

> control of premises; sit in FBI interviews of LottoNet employees (0.8); secure office facilities and electronic data (1.2).
>
> Review documents at LottoNet Office[]s for key information and privilege (3.); meeting with Receiver to review and discuss same[.] (1.)

(Id. at 14.)

Many of the tasks performed in 10 hours by Schwartz appear to be substantially similar to the tasks that the Receiver performed in 10.2 hours that same day. Indeed, the Receiver noted that he and Schwartz worked together on the initial review of documents recovered in LottoNet's office (including review for privileged material) (id. at 2) while Schwartz spent 3 hours reviewing documents for privilege and other information (id. at 14). Unfortunately, the Court cannot assess from these entries the distinct contributions made by these lawyers with regard to some of the listed tasks. Since compensation is based on each lawyer's distinct contribution to the case, a minor reduction in the hours claimed based on redundancy would be warranted. See Norman, 836 F.2d at 1301 (in making adjustments to the hours claimed, the court must deduct redundant hours); Johnson, 706 F.2d at 1208 (court may deduct from a fee award hours that represent the unreasonable duplication of work).

The problem is to some extent compounded by instances of block billing (that is, including multiple distinct tasks within the same time entry), particularly by the Receiver. The use of block billing, combined with more than one person working on the same or similar tasks, made it difficult for the Court to evaluate the extent of the duplication and

5

whether the amount of time spent by any one individual on any particular task was reasonable.[1]

By way of example, on March 23, 2017, three attorneys recorded billable hours for tasks related to the transfer of control of LottoNet's Bank of America ("BOA") accounts to the Receiver.  In a 5.1 hour "block" time entry, the Receiver reported that, as one of the many services he performed that day, he "went to BoA branch to assume control of bank accounts and to sign corporate resolutions and account documents."  (Id. at 4.)[2] Meanwhile, attorney Jeffrey Sloman ("Sloman," a shareholder at the Receiver's law firm) expended 4.2 hours "contacting and meeting with Bank of America representatives to transfer control of LottoNet related accounts to receiver" (Id. at 4) while Schwartz expended 1.0 hour on "multiple telephone conferences with Bank of America regarding the receivership" (Id. at 15).  The Receiver did not explain, and the time entries do not

---

[1] To be fair, the Receiver was, to a limited extent, explicitly permitted to block bill. The Order appointing the Receiver provided for entitlement to reasonable compensation as described in Plaintiff SEC's "Billing Instructions" and agreed to by the Receiver. (D.E. 12 at 17 ¶ 51.)  The Billing Instructions, in turn, specify that professionals seeking an award of fees may

> describe in one entry the nature of the services rendered during that day and the aggregate time expended for that day in an "Activity Category" . . . without delineating the actual time spent on each discrete activity in an Activity Category, provided, however, single time entries of more than one hour in an Activity Category that include two or more activities must include a notation of' the approximate time spent on each activity within the Activity Category.

(See, e.g., D.E. 6 at 12 ¶ 4 (emphasis in original).)

[2] As the Receiver did not break down the amount of time he spent on any of the tasks, it is not apparent how much time to attribute to BOA-related activity.

6

provide sufficient detail for the Court to determine, why it was necessary for two attorneys to physically go to the BOA office, or how the three lawyers divided all the BOA-related activity. Consequently, the Court cannot discern whether each attorney's work is separately compensable. See Barnes, 163 F.3d at 433 ("Missing from the billing records of all of the plaintiffs' attorneys is any indication of the distinct contribution each attorney made to the task of drafting the briefs.")

Another example of inadequately-explained work overlap is seen in the time entries for March 22, 2017. On that date, Schwartz spent 3 hours categorizing and boxing documents in LottoNet's office for a copying service. (D.E. 67-1 at 14.) That same day, "JMD"[3] spent 7 hours organizing and creating boxes of all evidence in each office at LottoNet. (Id. at 3.) Some allowance must be made for a lead attorney's instruction to a paralegal, the Court cannot tell whether or how much duplication of effort in fact occurred here.

In light of the duplication of effort described above, and because different individuals bill at different hourly rates, the Court will exercise its discretion in this matter and apply an across-the-board reduction of 5% to the total amount of attorneys' fees requested rather than cut 5% of the hours of each person who worked on the case. See Bivens v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (explaining that, where the number of hours claimed by a fee applicant is unreasonably high, the district court may either conduct an hour-by-hour analysis or it may reduce the hours using an

---

[3] While "JMD" could be either "Jennifer Dempsey" or "Janet Diaz," both individuals are billed at a paralegal's hourly rate of $75. (See D.E. 67 at 5.)

across-the-board cut; regardless, the court must concisely and clearly explain any reductions to allow for meaningful appellate review); Loranger, 10 F.3d at 783 (although an hour-by-hour analysis of hours expended is preferable, where fee documentation is so voluminous that an hour-by-hour review would be impracticable, an across-the-board percentage reduction may be appropriate); see also Norman, 836 F.2d at 1301 (the fee applicant bears the burden of providing sufficient detail to enable a court to determine the reasonableness and necessity of the time claimed for an action, but in the end, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court").

## II. Reasonable Hourly Rates

Prior to his appointment in this case, the Receiver agreed to reduce his normal hourly rate of $625 to $325, and similarly reduce the hourly rates of his associate attorneys and paralegals to $250 and $75, respectively. (See D.E. 6 at 35; see also D.E. 67 at 4-5.) The Receiver also agreed that his counsel, Adam Schwartz, would reduce his normal hourly rate of $475 to 320. (Id.) No objection was raised to these rates which the Court finds reasonable given the prevailing market rate in this legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (explaining that a court "is itself an expert on the question [of a reasonable hourly rate] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quoting Norman, 836 F.2d at 1303).

Although the hourly rates are themselves reasonable, the Court found three instances in which an attorney performed certain services that were billed at the attorney's normal hourly rate even though the tasks could have been handled by a paralegal and charged at the lower paralegal hourly rate. The first instance is on March 24, 2017, when attorney Christoph Gottfried ("Gottfried," an associate at the Receiver's law firm) expended 4.0 hours to secure LottoNet's mailboxes at different UPS stores. (D.E. 67-1 at 5.) The time entry reflects that Gottfried called different UPS stores, drafted cover letters and printed out copies of the Receivership Order which he then hand-delivered to the UPS stores, after which he took possession of LottoNet's mailboxes in those locations. (Id.) The Court sees no reason why these tasks could not have been accomplished by a paralegal. Accordingly, the Court will change the hourly rate applied to these tasks from $250 to $75 which has the effect of reducing the total amount for this time entry from $1,000 to $300 (thereby reducing the total amount of compensable fees by a sum of $700).

Next, on March 29, 2017, attorney Cara Grand ("Grand," an associate in Schwartz's law firm) spent 1.1 hours preparing Notice of Receivership filings for two other district courts. (Id. at 15.) Because there is nothing to indicate this task could not have been accomplished satisfactorily by a paralegal, the Court will change the hourly rate applied to this task from $220 to $75 which reduces the total amount for this time entry from $242 to $82.50 (thereby reducing the total amount of compensable fees by $159.50).

Finally, on April 20, 2017, Sloman expended 2.5 hours traveling "to meet with a former employee at LottoNet regarding return of property." (Id. at 12.) Without more information, the Court sees no reason why a paralegal or secretary could not have accomplished this task. Therefore, the Court will change the hourly rate applied to this task from $325 to $75 which reduces the total amount for this entry from $812.50 to $187.50 (thereby reducing the total amount of compensable fees by $625).

B. Costs

The Receiver seeks reimbursement in the amount of $5,512.54 for expenses incurred in connection with this case during the Application Period. (D.E. 67 at 6.) Based on a review of the supplemental materials submitted, the Court finds that the $4,396.15 expended by the Receiver, and the $1,116.39 expended by HBJ, were for actual and necessary expenses incurred in connection with this case. Accordingly, the Court will award the total amount requested by the Receiver.

II. Conclusion

Based on the foregoing, the Court finds that the fees requested in the Application for the period March 21, 2017 through April 30, 2017, as modified herein, are reasonable and for services performed that were necessary in this case. Furthermore, the Court finds that the costs for which reimbursement is sought were for actual and necessary items incurred in connection with this case.

Accordingly, it is **ORDERED AND ADJUDGED** that Receiver Ryan K. Stumphauzer's First Interim Joint Application for Allowance and Payment of

Compensation and Reimbursement of Expenses for Receiver and His Counsel (D.E. 67) is **GRANTED IN PART and DENIED IN PART** as follows:

1. The Court **AUTHORIZES** interim compensation to the Receiver in the amount of **$32,129.00** (comprised of $40,161.25 in fees net a 20% holdback) for the period of March 21, 2017 through April 30, 2017.

2. The Court **AUTHORIZES** interim compensation to Homer Bonner Jacobs, P.A. in the amount of **$21,801.74** (comprised of $27,252.18 in fees net a 20% holdback) for the period of March 21, 2017 through April 30, 2017.

3. The Court **AUTHORIZES** interim reimbursement of expenses to the Receiver and Homer Bonner Jacobs, P.A. in the total amount **of $5,512.54**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 26th day of February, 2018.

*/s/ Joan A. Lenard*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**